IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

REGGIE L. SEACRIST,

           Plaintiff,

v.                              CIVIL ACTION NO.   2:14-24372

METROPOLITAN SECURITY SERVICES, INC.,
d/b/a WALDEN SECURITY, a Tennessee corporation,
DANIEL S. HALL, in his official capacity of Chief, Office
of Court Security-Judicial Security Division of the
UNITED STATES MARSHALS SERVICE, and
HONORABLE ERIC HOLDER, in his official capacity as
Attorney General of the United States and Chief
Administrative Officer of the THE DEPARTMENT OF JUSTICE,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Defendants United States Marshals Service, Daniel S. Hall, in his official capacity as Chief of the Office of Court Security—Judicial Security Division, the Department of Justice, and the Honorable Eric Holder, in his official capacity as Chief Administrative Officer of the Department of Justice (hereinafter collectively referred to as USMS) (ECF No. 29); a Motion to Dismiss or, in the Alternative, for Summary Judgment by Metropolitan Security Services, Inc., d/b/a Walden Security (hereinafter Walden Security) (ECF No. 30); and a Motion for Leave to File Amended Answer to Assert Additional Affirmative Defense. ECF No. 28.   For the following reasons, the Court **GRANTS, in part,** and **DENIES, in part,** the USMS's Motion to Dismiss; **DENIES** Walden Security's Motion to Dismiss or, in the Alternative, for

Summary Judgment; and **DENIES WITHOUT PREJUDICE** Walden Security's Motion for Leave to File Amended Answer to Assert Additional Affirmative Defense.

# I.
# FACTUAL ALLEGATIONS

On August 5, 2014, Plaintiff Reggie L. Seacrist filed a Complaint against Defendants. Thereafter, on August 12, 2014, he filed an Amended Complaint. In his Amended Complaint, Plaintiff asserts he was employed as a Court Security Officer (CSO) by Walden Security and the USMS at the federal courthouse in Charleston, West Virginia. *Am. Compl.* at ¶¶8-9. Plaintiff claims that he fully disclosed to his joint employers that he is an insulin-dependent Type 2 diabetic when he applied for employment in 2006. *Id*. at ¶10. Plaintiff states he underwent required annual medical exams, which demonstrated his diabetes was stable and controlled. *Id*. at ¶12. When Plaintiff had his annual medical exam and blood tests on July 9, 2013, his glucose level was 87 and within the normal standards adopted by Walden Security and the USMS. *Id*. at ¶13. His physician further stated Plaintiff had no work restrictions. *Id*.

Plaintiff claims that on October 6, 2013, the Department of Health and Human Services, Program Support Center, Federal Occupational Health (FOH), a designated agent of Defendants for medical review and medical clearance, completed a medical review form and stated:

> *The examinee has diabetes treated with Insulin. …. The need for insulin therapy suggests that the examinee is prone to excessive hyperglycemia. However, insulin therapy also significantly increases the risk of hypoglycemic events. …. DUE TO THE SIGNIFICANT ADVERSE EFFECTS OF HYPOGLYCEMIA AND EXCESSIVE HYPERGLYCEMIA, PENDING FURTHER REVIEW, it is recommended that the CSO be removed from all work duty.*

*Id*. at ¶¶5 & 18 (emphasis and ellipses in Am. Compl.). Plaintiff also was informed that he must provide supplemental medical information and submit to additional medical testing, including a stress test, an eye exam, complete lab work, delineated blood sugar testing over a three month period, the past two years of insulin use and lab work, and a letter from his treating physician with the medical notes. *Id*. at ¶22. Thereafter, on October 9, 2013, Daniel S. Hall, Chief of the Office of Court Security-Judicial Security Division of the USMS wrote Walden Security and advised that FOH had reviewed Plaintiff's medical information and "Plaintiff '*must discontinue performing under the contract until the requested supplemental medical information is received, reviewed, and it is determined that [Plaintiff] meets the CSO medical standards required by the contract.*'" *Id*. at ¶17 (italics original in Am. Compl.).

Plaintiff asserts that his supervisor with Walden Security informed him on October 10, 2013, "that he was being *suspended without pay . . . . because he was [a] diabetic who was on insulin*." *Id*. at ¶15 (italics original in Am. Compl.). Plaintiff also was given a letter which states, in part:

> "*[Y]ou've been temporarily removed from performing as a court security officer under this contract pending FOH and USMS evaluation and determination of your medical qualification. This action is a direct result of your failure to pass the annual medical examination required of all court security officers servicing this government contract.*"

*Id*. at ¶16 (italics original in Am. Compl.).

Plaintiff alleges that FOH never conducted an individualized assessment of him, and no reviewing physician ever found an episode of hypoglycemia or excessive hyperglycemia. Likewise, there was never a determination he could not perform the essential functions of his

-3-

position. *Id*. at ¶18. Similarly, Plaintiff asserts neither the USMS nor Walden Security made an individualized assessment of him or determined he could not do his job, with or without reasonable accommodations. *Id*. at ¶19.

Prior to Plaintiff providing any of the requested supplemental medical information, "FOH completed a new Medical Review Form on November 5, 2013, finding "*PENDING FURTHER REVIEW, it is recommended that the examinee be returned to full duty status based on his long experience with insulin use and his current fasting glucose levels.*" *Id*. at ¶¶ 28-29 (italics in Compl.). Plaintiff was returned to work on November 8, 2013, but he was advised that he would have "to provide all of the supplemental medical information as requested. In addition, [he] . . . was informed that he would also be required to have a C-Peptide blood test and urinalysis." *Id*. at ¶30. Plaintiff states that he followed strict medical monitoring over the next three months, and he submitted the information on February 14, 2014. *Id*. at ¶¶31-32. On March 31, 2014, he was notified he was "'medically qualified.'" *Id*. at ¶32.

On February 10, 2014, Plaintiff filed a formal complaint with the Office of Equal Employment Opportunity, Department of Justice, pursuant to Section 501 of the Rehabilitation Act of 1973 against the USMS. *Id*. at ¶36. Plaintiff waited 180 days before filing this action. Thus, Plaintiff asserts he exhausted his administrative remedies. *Id*. at ¶36. In his action, Plaintiff alleges in Count One that he was unlawfully discriminated against by the USMS in violation of the Rehabilitation Act. In Count Two, he asserts a claim for unlawful discrimination under the Americans with Disabilities Act of 1990, as amended, against Walden Security. Finally, in Count

Three, Plaintiff alleges unlawful discrimination by Walden Security in violation of the West Virginia Human Rights Act.

## II.
## DISCUSSION

In its Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, the USMS argues Plaintiff failed to exhaust his administrative remedies as to all his claims because he did not initiate timely contact with the USMS Equal Employment Opportunity (EEO) Counselor. Pursuant to 29 C.F.R. § 1614.105(a)(1), a plaintiff "must initiate contact with a[n EEO] Counselor within 45 days of . . . the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  The USMS asserts it is undisputed that Plaintiff did not comply with this regulation because Plaintiff made initial contact with the USMS EEO Counselor on December 11, 2013, which was 62 days after the alleged discriminatory act.

In response, Plaintiff argues that the 45-day time period did not begin to run on October 10, 2013, because his indefinite suspension was "equivocal" as it did not tell him if his employment was being terminated, nor when he would be returned to work.  As he was not returned to work until November 8, Plaintiff insists that his contact with the EEO Counselor on December 11 was within the required time period.  In support, Plaintiff cites *Adkins v. SuperValu, Inc.*, Civ. Act. No. 3:08-1448, 2009 WL 2029807 (S.D. W. Va. 2009), which relied upon *Independent Fire Co. No. 1 v. West Virginia Human Rights Comm'n*, 376 S.E.2d 612 (W. Va. 1988).  However, the Court finds these cases do not control this situation.

In *Independent Fire Co.*, the West Virginia Supreme Court addressed the issue of when the time period begins to run for filing a complaint with the West Virginia Human Rights Commission. In that case, the complainant was a member of a volunteer fire company who alleged he was indefinitely suspended because he supported a female for membership. 376 S.E.2d at 613. The complainant was notified of his suspension on May 9, 1977. Plaintiff contacted an attorney who sought to have him reinstated. By letter dated November 4, 1977, the complainant was informed by his counsel that negotiations had failed. *Id*. Thereafter, the complainant filed a complaint with the Human Rights Commission on January 30, 1978. *Id*. The Commission determined the complaint was timely filed within ninety days of being denied reinstatement on November 4. On certified question, the West Virginia Supreme Court stated the complaint could be viewed in two ways. First, it could be viewed as a discriminatory termination that did not become clear until November. Second, it could be viewed as a refusal to reinstate which occurred within the existing limitation period. *Id*. at 618. Therefore, the West Virginia Supreme Court found it timely filed. *Id*.

Relying, in part, on *Independent Fire Co.*, this Court was asked to determine in *Adkins* when the statute of limitations begins to run on a claim of age discrimination under the West Virginia Human Rights Act. 2009 WL 2029807, at *1. However, the issue in *Adkins* was raised on a motion to dismiss. In considering the complaint, the Court found it was impossible to determine when the plaintiffs received unequivocal notice that their layoffs were permanent or were given notice they were discharged. *Id*. at *3. Therefore, the Court found discovery was necessary. *Id*.[1]

---

[1] The Court ultimately remanded the action for lack of federal jurisdiction. *Id*. at *6.

The Court finds that application of these cases to the current situation is inapposite and distinguishable. In both *Independent Fire Co.* and *Adkins*, the aggrieved individuals were indefinitely suspended/laid off and, at some point learned, they were terminated. Here, however, Plaintiff was not terminated, but was reinstated on November 8. Thus, with respect the suspension, the discrete act of alleged discrimination could not have occurred on November 8 because it is not when Plaintiff's suspension became clear, nor was it a failure to reinstate. Instead, Plaintiff was reinstated, and his reinstatement, by itself, was not a discriminatory act. Therefore, the Court finds "the effective date of the action" suspending him was October 10 and outside the 45-day window. 29 C.F.R. § 1614.105(a)(1)

However, when he was reinstated, Defendants reimposed the medical testing and monitoring requirements and added new testing requirements. Plaintiff asserts he was subjected to disparate treatment because other CSOs who had glucose levels exceeding the USMS's standards were not required to pass such strict medical criteria. As pled, this requirement is a new discrete act of alleged discriminatory conduct which occurred within the 45-day time period by which Plaintiff had to initiate contact with an EEO Counselor. Therefore, it is not barred under the statute.

Plaintiff also argues that the Court should find his claims are not barred under the doctrines of equitable estoppel and equitable tolling. The doctrine of "[e]quitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) (citations omitted). In addition, although equitable estoppel can

be applied against civil litigants, "equitable estoppel against the government is strongly disfavored." *Barr v. United States Marshals Serv.*, No. 3:05-1208-CMC-JRM, 2007 WL 2579399, *5 (D. S.C. Sept. 4, 2007) (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 421, 422-23 (1990) ("leav[ing] for another day whether an estoppel claim could ever succeed against the Government," but observing that "we have reversed every finding of estoppel [against the Government] that we have ever reviewed."). Specifically, in *Richmond*, the United States Supreme Court held that "erroneous oral and written advice given by a Government employee to a benefits claimant" cannot "give rise to estoppel against the Government[.]" *Richmond*, 496 U.S. at 421.

Taking the Complaint in this case in the light most favorable to the Plaintiff under the motion to dismiss standard, the Court finds Plaintiff's equitable estoppel argument fails as a matter of law. There is simply nothing in the Complaint which alleges the USMS intentionally misled Plaintiff into missing the filing deadline. Moreover, even if the Court considers the additional allegations made in Plaintiff's response brief, the Court finds they are insufficient for equitable estoppel to apply. Specifically, Plaintiff states the USMS failed to identify itself as his joint employer, and he was unaware the USMS was his joint employer until he spoke with his attorney on December 6, 2013. Plaintiff further asserts that the posters in the CSO locker room failed to mention anything about the 45-day deadline or that CSOs were USMS employees. He also complains that, although the poster in the common area of the USMS's office contained the 45-day deadline, it provided it applied "[i]f you are a U.S. Marshals Service (USMS) employee or applicant for employment," and he had no idea he was an employee. However, even if true, the

Court finds these allegations do not allege any intentional misconduct which would warrant applying equitable estoppel.

Plaintiff also argues that the doctrine of equitable tolling should apply. Equitable tolling differs from equitable estoppel in that equitable estoppel occurs "where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *English*, 828 F.2d at 1049 (citations omitted). Equitable tolling typically is found "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (footnote omitted). Thus, "[t]o invoke equitable tolling, the plaintiff must . . . show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." *English*, 828 F.2d at 1049 (citation omitted). The Fourth Circuit recently explained that equitable tolling applies "in two circumstances: first, when 'the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant,' and second, when 'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Cruz v. Maypa*, 773 F.3d 138, 145 (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (internal quotation marks omitted in *Cruz*)). In addition, the Fourth Circuit stated that "[e]quitable tolling is a rare remedy available only where the plaintiff has 'exercise[d] due diligence in preserving [her] legal rights.'" *Id.* 145-46 (quoting *Chao v. Virginia Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) (quoting *Irwin*, 498 U.S. at 96.

Assuming the truth of Plaintiff's allegations, the Court finds they fail to meet this standard. In this case, Plaintiff basically argues that equitable tolling should apply because the USMS never identified itself as his employer and he could not have been expected to have known that the USMS was his joint employer. However, Plaintiff does not allege that the USMS committed some type of misconduct or induced him into believing he was not an employee, thereby preventing him from pursuing his legal remedies. Likewise, the fact Plaintiff was unaware the USMS was a joint employer does not plausibly constitute an "extraordinary circumstance" that made it impossible for Plaintiff to meet the filing deadline. Therefore, the fact Plaintiff was not aware of his employment status does not fall within the grounds that would permit this Court to equitably toll the deadline.

Plaintiff further complains, however, that neither the poster in the common area of the USMS's office, nor the poster in the CSOs' locker room, identified CSOs as USMS employees. Again, however, the fact that the posters did not specifically state that CSOs are USMS employees could not plausibly be viewed as a form of trickery in order to induce a CSO to miss the filing deadline. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. at 96. Therefore, equitable tolling is not justified under the facts of this case.[2]

---

[2]Plaintiff also complains that he was not even aware of the USMS's poster because he does not walk where the bulletin board is located. Thus, he was prevented from knowing of the 45-day time period. *See Vance v. Whirlpool*, 716 F.2d 1010, 1012-13 (4th Cir. 1983) (holding the failure of Whirlpool to post a notice in a prominent place informing employees of their rights under ADEA prevented a former employee of learning of his rights and, thus, warranted equitable tolling). Additionally, Plaintiff argues that the poster fails to provide the information required under 29 C.F.R. § 1614.102(b)(7). However, even if it had been posted in the CSOs' locker room and contained all the information Plaintiff believes is missing, Plaintiff would not have thought it applied to him because he was under the impression he was not an employee of the USMS. Thus, the location and allegedly missing content of the poster is not the reason why Plaintiff did not know of the 45-day requirement. Therefore, to the extent Plaintiff argues that the poster should

Turning next to the Motion for Leave to File Amended Answer to Assert Additional Affirmative Defense (ECF No. 28), Walden Security seeks to amend its Answer to assert an additional affirmative defense reserving a right to assert that Plaintiff failed to exhaust his administrative remedies. Plaintiff opposes the motion because Walden Security did not attach a copy of the Amended Answer in order to know exactly what the proposed amendment entails, nor did it set forth a factual basis for an amendment. In addition, Plaintiff asserts that the arguments made by the USMS regarding exhaustion under § 1614.105(a)(1) do not even apply to the two causes of action asserted against Walden Security, a private employer, under the American with Disabilities Act (Count Two) and the West Virginia Human Rights Act (Count Three).

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).[3] Although amendments are liberally granted, it is not entirely clear what exhaustion defense Walden Security seeks to make because it did not attach a copy of its proposed Amended Answer. It appears from Walden Security's motion that it seeks to base its exhaustion defense on § 1614.105(a)(1), but it has not made any argument as to why that regulation would apply to the claims made against it as a private employer and why it is not simply an act in futility. *See In re PEC Solutions, Inc. Sec. Litig*., 418 F.3d 379, 391 (4th Cir. 2005) ("Leave to amend need not be given when amendment

---

have been in a more prominent location and should have contained certain phone numbers and addresses, the Court finds such arguments irrelevant.

[3]Rule 15 also permits amendment "once as a matter of course within . . . 21 days after serving it," however, that situation is not relevant here. Fed. R. Civ. P. 15(1)(A).

would be futile." (citations omitted)). Therefore, given the fact the Court cannot properly analyze the request before it, the Court **DENIES** the motion **WITHOUT PREJUDICE**.

Lastly, with respect to Walden Security's Motion to Dismiss or, in the Alternative, for Summary Judgment, it summarily "incorporates the arguments and legal citations of" the USMS and asks for judgment in its favor. *Metropolitan Sec. Serv., Inc.'s Motion to Dismiss or, in the alternative, for Summ. J.,* ECF No. 30, at 1. Again, however, Walden Security makes absolutely no argument as to why or how the Court should apply the 45-day rule under § 1614.105(a)(1) to a private employer for the claims asserted against it. Therefore, the Court **DENIES** the motion.

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS, in part,** and **DENIES, in part,** the USMS's Motion to Dismiss (ECF No. 29), **DENIES WITHOUT PREJUDICE** Walden Security's Motion for Leave to File Amended Answer to Assert Additional Affirmative Defense (ECF No. 28), and **DENIES** Walden Security's Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 30.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: April 3, 2015

_____
ROBERT C. CHAMBERS, CHIEF JUDGE